UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTEPHANIA ARZATE ROMAN
ARANA,

              Plaintiff,

– against –

EXPERIAN INFORMATION
SOLUTIONS, INC. d/b/a EXPERIAN,

              Defendant.

**OPINION & ORDER**

25-cv-02775 (ER)

RAMOS, D.J.:

Estephania Arzate Roman Arana ("Roman Arana") filed this action against Experian Information Solutions, Inc. ("Experian") on February 18, 2025, pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, in the Supreme Court of the State of New York, County of New York. Doc. 1-1. Experian removed the action to this Court on April 3, 2025. Doc. 1. Pending before the Court is Experian's motion to transfer venue to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Doc. 10. For the reasons set forth below, the motion is GRANTED.

## I.    BACKGROUND

### A.  Factual Background

Roman Arana resides in Orlando, Florida. Doc. 16 at 18. Experian is a corporation with a principal place of business in Costa Mesa, California. Doc. 5 at 3. Roman Arana sent a dispute letter to Experian at its designated address in Allen, Texas on January 31, 2025, requesting a "thorough reinvestigation" into the accuracy and completeness of four accounts—referred to by the parties as "tradelines".[1]—in her consumer file which appeared in Experian's consumer reports. Doc. 1-1 at 14–15. In her

---

[1] Roman Arana identified the following tradelines in her dispute letter: (1) Bank of America (BK OF AMER - *1362); (2) Wells Fargo Bank (WFBNA CARD - *0389); (3) Comenity Bank (CB/VICSCRT - *4306); and (4) OpenSky Capital Bank (OPENSKY CBNK - *7564). Doc. 1-1 at 8.

letter, Roman Arana disputed missing fields in her payment history related to "Scheduled Payment Amount" and "Actual Amount Paid," which she alleges are crucial to ensuring full compliance with "Metro 2," which she characterizes as "the industry standard for proper credit reporting." *Id.* at 14.

Roman Arana alleges that, rather than conducting a reasonable reinvestigation in response to her letter, Experian stalled and sent her a form-letter on February 11, 2025, *id.* at 17, that did not detail any substantive steps it took to verify, correct, or remove the inaccurate information. *Id.* at 8–9. Specifically, she alleges that Experian did not confirm if it had contacted the providers of the disputed tradelines, verified the completeness of the payment history, or otherwise ensured Metro 2 compliance. *Id.* at 9. Roman Arana alleges that Experian's failure to act resulted in significant harm to her creditworthiness and financial standing, which caused her to suffer economic harm, credit denials, emotional distress, and loss of time and resources. *Id.* at 9, 10.

### B. Procedural Background

Roman Arana filed this action on February 18, 2025, in New York State Supreme Court alleging, among other things, that Experian failed to conduct a reasonable re-investigation into her consumer file after she raised a dispute, and that Experian used unlawful "stalling tactics" in violation of FCRA—15 U.S.C. § 168li, 15 U.S.C § 168ln, and 15 U.S.C § 168lo. Doc. 1-1. Experian removed the case to this Court on April 3, 2025, based on federal question jurisdiction pursuant to 28 U.S.C § 1331 and 15 U.S.C. § 1681p. Doc 1.

Experian answered the complaint on April 10, 2025. Doc. 5. Experian also filed a letter-motion on April 16, 2025, requesting a conference with the Court in anticipation of making a motion to transfer venue to the Middle District of Florida. Doc. 6. The Court granted Experian's request for a conference on May 21, 2025, and directed Roman Arana to reply to the letter by May 28, 2025. Doc. 7. Roman Arana did not reply, but both parties appeared at the pre-motion telephonic conference on June 6, 2025, during

2

which the Court granted Experian leave to file the motion to transfer venue.  Doc. 8 at 7.

The Court also set the following briefing schedule:  (1) Experian's moving papers due

June 27, 2025; (2) Roman Arana's opposition due July 18, 2025; and (3) Experian's reply

due July 25, 2025.  *Id.*

Experian filed the motion on June 27, 2025, Doc. 10, as well as a memorandum of

law, Doc. 11, and a declaration, Doc. 12.[2]  Roman Arana did not respond to the motion

---

[2] Defendant's counsel in the instant case included as an exhibit to her declaration in support of the motion, the order of Magistrate Judge Sarah Cave in *Jones v. Equifax Information Services LLC*, No. 25-cv-1535 (GHW) (SLC), 2025 WL 1466898 (S.D.N.Y. May 22, 2025).  Doc. 12 ¶ 3. Ex. 2.  Counsel for the plaintiff in *Jones* is the same as counsel for plaintiff in the instant case, Brian Ponder.  Experian argues here that *Jones* arises from substantially similar facts, and, that in resisting transfer in *Jones*, Ponder made many of the same arguments he urges here.  Doc. 11 at 14–15; Doc. 17 at 6 n.1.  In *Jones*, Magistrate Cave made the following observations about Ponder's submission:

> [T]here are several curiosities about Mr. Jones' opposition to the Motion, including its misrepresentation of the holdings and misquotation of cases.  In addition, Mr. Jones has not provided any persuasive explanation for filing an action in this District, where neither he nor Experian are based, no acts giving rise to his claims occurred, and no individuals with knowledge of relevant information about the claims and defenses are present.  *See* [*Cento Pearl v. Arts & Craft Supply, Inc.*, No. 03-cv-2424, 2003 WL 1960595, at *2 (S.D.N.Y. Apr. 24, 2003)] (granting motion to transfer where plaintiffs gave "no reason whatsoever for their choice of this district").  We again must note that Federal Rule of Civil Procedure 11(b)(2), 28 U.S.C. § 1927, and the Court's inherent power provide authority to impose sanctions for materially false or misleading statements in court documents.  *See generally United States v. Cohen*, 724 F. Supp. 3d 251, 257–58 (S.D.N.Y. 2024).  While the record does not contain "clear and convincing evidence" that Mr. Jones and his counsel "knowingly submitted a material[ ] false or misleading pleading" with the requisite bad faith, *Usherson v. Bandshell Artist Mgmt.*, No. 19 Civ. 6368 (JMF), 2020 WL 3483661, at *9 (S.D.N.Y. June 26, 2020), the errors in Mr. Jones' opposition, even if arising from mere haste and sloppiness, have again increased the effort required of the Court to analyze Mr. Jones' arguments.  Mr. Jones' counsel should thus consider this a *second* reminder of their obligations under Federal Rules of Civil Procedure 1 and 11(b) not to engage in tactics that contravene the need "to secure the just, speedy, and inexpensive determination" of this action in whichever district it proceeds. Fed. R. Civ. P. 1.  We urge Mr. Jones not to take his chances on a third strike before the transferee judge in the Northern District of Georgia.

2025 WL 1466898 at *7.  Ponder submitted his opposition to the motion in this case more than two months *after* he received the admonition from Judge Cave in *Jones*.  Clearly, Ponder did not take the admonition to heart.  In his opposition, he makes substantially similar arguments that Judge Cave rejected and includes many of the same misrepresentations and misquotations that she highlighted.

For example:

by the July 18, 2025 due date, nor did she seek an extension to file a response. *See* Doc. 13 at 2. As directed, Experian filed a reply memorandum in support of its motion to transfer venue on July 24, 2025, arguing that this Court should deem the motion unopposed. Doc. 13. However, on July 25, 2025, the Court directed Roman Arana to file

---

- Ponder misquotes *TM Claims Service v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402 (S.D.N.Y. 2001), by asserting that a movant must provide "specific evidence" of inconvenience and that "mere assertions of inconvenience or hardship are insufficient to justify transfer." Doc. 16 at 6 (quoting 143 F. Supp. 2d at 404–05). The quoted language does not appear therein. Ponder further attributes to *TM Claims Service* the proposition that "shippable or scannable" documents pose no burden and that a movant must provide proof of "practical concerns" regarding the location of relevant documents. *Id.* at 20 (quoting *TM Claims Service*, at 405). That language, likewise, does not appear therein.

- Ponder misquotes *New York Marine & General Insurance Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010), as stating that analysis under § 1401(a) is "equitable" and "flexible." Doc. 16 at 10 (quoting 599 F.3d at 114). The quoted language does not appear therein. Ponder also misquotes the opinion as holding that the locus of operative facts factor remains neutral where harms involve broader economic effects that "manifest in NY markets." *Id.* at 21 (quoting *New York Marine & General Insurance*, at 112). Again, this language does not appear in the decision.

- One two separate occasions, Ponder misquotes *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207 (S.D.N.Y. 1995), as stating that "mere speculation" about witness inconvenience or the location of relevant documents to be insufficient and that the court required "concrete evidence." Doc. 16 at 11, 18 (quoting 904 F. Supp. at 216). The quoted language does not appear therein.

- Ponder cites to the phrase "clear and convincing" in *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998), to describe the evidence a movant must show in arguing that it would be burdensome to litigate in the district to which the case was removed. Doc. 16 at 13. The phrase does not appear in that case.

- Ponder asserts that the phrase "strong presumption" appears in *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71–72 (2d Cir. 2001), to describe the degree of deference afforded to a plaintiff's choice of forum. Doc. 16 at 15. It does not.

- Ponder misquotes *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342 (E.D.N.Y. 2012), as upholding a plaintiff's choice of forum so long as the operative facts show at least "some connection" to the forum. Doc. 16 at 16 (citing 888 F. Supp. 2d at 348–49). The quoted language does not appear therein.

The Court notes that the New York Appellate Division, First Department disbarred Ponder on March 5, 2026 on the basis of his disbarment in the Western District of Oklahoma in 2019. *See Matter of Ponder*, No. 2025-04519, 2026 WL 615824 (N.Y. App. Div. Mar. 5, 2026). In the Western District of Oklahoma, a disciplinary hearing panel found that Ponder "repeatedly pursued frivolous claims resulting in attorney's fees and sanctions; inexcusably missed filing deadlines and hearings; refused to engage in good faith discovery; and participated in deceitful conduct before the court. *See id.* at *2. While the Court is unaware whether Ponder has managed to avoid a "third strike" before the transferee judge in the Northern District of Georgia, he certainly has not avoided it here. The Court will be providing a copy of this Opinion and Order to the Committee on Grievances for the Southern District of New York, so that they may take whatever action they see fit as concerns Ponder's continued ability to practice here.

an opposition by July 31, 2025.  Doc. 15.  Roman Arana filed her opposition on July 31, 2025, as directed.  Doc. 16.  Experian responded to Roman Arana's opposition on August 7, 2025.  Doc. 17.  Experian also filed a notice of supplemental authority on August 14, 2025, attaching a decision issued by the Eastern District of New York in *Luis Miguel Laguna Ortega v. Trans Union (of Delaware), LLC, et al.*, No. 25-cv-01606 (DG) (PK), 2025 WL 2330227, ECF No. 33 (E.D.N.Y.).  Doc. 18.  That case, also brought by Plaintiff's counsel, Brian Ponder, against multiple defendants, including Experian, and arising from substantially similar facts, held that transfer was appropriate.  In response, Roman Arana filed an objection to Experian's notice on August 15, 2025, requesting that the Court disregard the supplemental authority.  Doc. 19.[3]

## II.    LEGAL STANDARD

Venue in cases that have been removed from state court to federal court are governed by the removal statute, 28 U.S.C. § 1441(a).  The removal statute provides that venue is proper in "the district court of the United States for the district and division embracing the place where such action is pending."  *PT United Can*, 138 F.3d at 72 (quoting 28 U.S.C. § 1441(a)).  A party may challenge the removal as improper if it was made to a district court other than the one "embracing" the state court to which case was originally brought.  *Id.* at 72.  A party may not, as of right, challenge the propriety of the post-removal venue as if the case had originally been brought there, but "[a] party may nonetheless request a discretionary transfer to a more convenient district court forum under the transfer provision."  *Id.* (citing 28 U.S.C. § 1404(b)).

Courts consider post-removal requests to transfer venue under 28 U.S.C. § 1404(a).  Section 1404(a) permits transfer "to another district where that action might have been brought," even when venue is proper in the district where removal occurred. *Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201, 235 (S.D.N.Y. 2013).  "[T]he purpose

---

[3] Roman Arana's objection to Experian's Notice of Supplemental Authority is denied.

of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26, 27 (1960)). When considering a motion to transfer venue pursuant to § 1404(a), a court must first determine whether the action "might have been brought in the transferee court", and, if so, the court then considers whether the proposed transfer serves "the convenience of parties and witnesses" as well as "the interest of justice." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998) (internal quotations omitted). In determining if convenience and justice favor a transfer, courts are guided by nine factors:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with governing law, (8) the weight accorded to plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*See, e.g.*, *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006); *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995). "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Smart Skins LLC v. Microsoft Corp.*, No. 14-cv-10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015). The Court has broad discretion in weighing the balance of each factor. *See, e.g.*, *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Transfer is only appropriate, however, if the moving party has demonstrated that these factors support the transfer in venue by "clear and convincing evidence." *New York Marine & General Insurance Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010) (collecting cases).

### III.    DISCUSSION

As discussed above, this is not the first FCRA case brought in this Circuit by Ponder that were subsequently ordered to be transferred.  *See Laguna Ortega*, No. 25-cv-01606, ECF No. 33; *Lopez de Paz v. Experian Information Solutions, Inc.*, No. 25-cv-2180 (JGK), 2025 WL 2710310 (S.D.N.Y. Sep. 19, 2025); *Jones v. Equifax Information Services LLC*, No. 25-cv-1535 (GHW) (SLC), 2025 WL 1466898 (S.D.N.Y. May 22, 2025).  Those decisions are persuasive and provide useful guidance in evaluating the present motion.

Ponder attempts to distinguish *Jones* on the grounds that there, "the plaintiff failed to argue any meaningful ties to New York, relying instead on speculative references to the state's 'financial infrastructure' that the court dismissed as attenuated, with no emphasis on removal or waiver issues and inadequate development of the transfer factors, including no attested connections or credit denials linked to New York entities."  Doc. 16 at 23.  That characterization, however, aptly describes the deficiencies present in this case as well.

#### A.  This Action Could Have Been Brought in the District of Middle Florida

The threshold inquiry under 28 U.S.C. § 1404(a) is whether this action "might have been brought" in the district to which transfer is sought.  Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).

Experian argues that Roman Arana could have brought this action in the Middle District of Florida because she "resides in Orlando, Florida" and her claims arose directly out of communications which she sent from the Middle District of Florida and responses to which she received in the Middle District of Florida.  Doc. 11 at 9.  Accordingly, venue would have been proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2).  *Id.*

7

Roman Arana acknowledges that she currently resides in Orlando, Florida, and does not dispute that the communications forming the basis for her claims were sent from and received at residence in Orlando, Florida. *See* Doc. 16 at 18. Instead, Roman Arana argues that "Experian's voluntary removal of this action" from the Supreme Court of the State of New York "to this Court constitutes a waiver of any subsequent assertion that this venue is inconvenient or otherwise improper." *Id.* at 12. In support of this argument, Roman Arana relies primarily on *PT United Can*. Specifically, Roman Arana contends that Experian, by removing this case from New York State Court to this Court, assumed a "significant burden … when it later seeks transfer under § 1404(a)." Doc. 16 at 12 (citing *PT United Can*, 138 F.3d at 72–73). According to Roman Arana, Experian must now "demonstrate extraordinary circumstances justifying departure from its own chosen federal forum" because Experian's act of removal "signals consent to litigate there absent compelling evidence of unforeseeable hardship." *Id.* (citing *PT United Can*, 138 F.3d at 72–73)[4]. Roman Arana further asserts "that once removed, venue is fixed under § 1441(a), and transfer motions must address why the embracing district—chosen by the defendant—is now burdensome, requiring 'clear and convincing' proof of specific, post-removal developments." *Id.* at 13 (citing *PT United Can*, 138 F.3d at 73). In response, Experian claims that Roman Arana's "citations appear to be fabricated." Doc. 17 at 8.

To be clear: Roman Arana's argument is flatly wrong and her reliance on *PT United Can* wholly misplaced. Indeed, *PT United Can* does not stand for the proposition that a party that removes a case to the district embracing the state court must "demonstrate extraordinary circumstances justifying departure from its own chosen

---

[4] Ponder misrepresents *PT United Can* as "not[ing] that *Polizzi v. Cowles Magazines, Inc.*, confirms removal venue is proper as a matter of law, and post-removal transfers require overcoming the presumption of suitability." Doc. 16 at 12 (citing *Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665–66 (1953)). Ponder seems be referencing the court's restatement of the plaintiff's argument "that the defendants 'waived' venue, or fixed it as a matter of law, through removal to federal court." *See PT United Can*, 138 F.3d at 72. The court, however, plainly rejected this argument.

federal forum." In fact, it holds precisely the opposite. In *PT United Can*, the Second Circuit explained that following removal, a party "may … request a discretionary transfer to a more convenient district court forum under the transfer provision" of Section 1404(a). *PT United Can*, 138 F.3d at 72. The court further noted that "[a] party who removes an action from state to federal court does not, in doing so, waive the defense of improper venue as to the underlying state court action." *Id.* This is because the removal statute requires that a case be removed to "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Because the removing defendant had no discretion in selecting that forum, "there can be no waiver." *PT United Can*, 138 F.3d at 73 (quoting *Greenberg v. Giannini*, 140 F.2d 550, 553 (2d Cir. 1944)) (internal quotations omitted). In the words of Judge Learned Hand, "[w]hen a defendant removes an action from a state court in which he has been sued, he consents to nothing and waives nothing." *Greenberg*, 140 F.2d at 553 (internal quotations omitted). The legal principle is well settled that a removing defendant may nonetheless challenge the propriety of venue in the state court from which the case was removed. Roman Arana's contention that Experian waived its venue arguments by removing the case to this Court is therefore patently without merit.

Because Roman Arana's claims arise under the FCRA, this action presents a federal question that could have been brought in the United States District Court for the Middle District of Florida. *See* 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the … laws … of the United States"). Venue would likewise be proper in that district. Experian does not dispute that it is subject to personal jurisdiction in that district and acknowledges that venue would be proper there. Doc. 11 at 9.

Because this action could have initially been brought in the Middle District of Florida, the first step in the inquiry is satisfied.

9

### B. The Private and Public Interest Factors

#### 1. Convenience of Witnesses and the Parties

Courts in this District have consistently recognized the convenience of witnesses as the most important factor in determining whether a transfer should be granted under 28 U.S.C. § 1404(a), *see, e.g.*, *Guardian Life Insurance Company of America v. Coe*, 724 F. Supp. 3d 206, 214 (S.D.N.Y. 2024) (collecting cases), and routinely accord more weight to the convenience of non-party witnesses than to that of party witnesses. *See, e.g.*, *Indian Harbor Insurance Co. v. Factory Mutual Insurance Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005); *Herbert Limited Partnership v. Electronic Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). In evaluating this factor, courts "consider the materiality, nature, and quality of each witness," rather than "merely the number of witnesses in each district." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016). Because "[t]he core determination under § 1404(a) is the center of gravity of the litigation … [c]ourts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." *Viacom International, Inc. v. Melvin Simon Productions, Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991).

As Experian contends, Roman Arana is "the most important witness in this case" and is located in Florida. Doc. 11 at 11. Experian further asserts that additional witnesses with knowledge of Roman Arana's alleged damages, particularly her claim of emotional distress, "which would likely include treating doctors, therapists, co-workers, family members, or friends," are also "likely to reside in Florida." *Id.* at 11–12. Roman Arana responds that Experian "offer[s] only vague speculation about 'potential' witnesses in Florida." Doc. 16 at 17–18. She asserts that she "anticipates calling representatives from New York-based financial institutions." *Id.* at 18. Importantly, however, Roman Arana does identify those witnesses nor represent that they are, in fact, located in New York.

Turning to the parties themselves, Experian, a corporate entity "based in California," asserts that "it would be no less convenient" for it to litigate in Florida than New York. Doc. 11 at 12. Roman Arana acknowledges that she resides in Orlando, Florida, but contends that she specifically selected this venue and "should not be penalized for her residence.[5]" Doc. 16 at 18. Although she asserts that she would not "face[] any genuine inconvenience from proceeding in New York," she does not claim that litigating in the Middle District of Florida would be inconvenient for her. *Id.* Nor could she reasonably maintain that this District is more convenient than the district of her residence. *See Price v. Stossel*, No. 07-cv-11364, 2008 WL 2434137 (SWK), at *4 (S.D.N.Y. June 4, 2008) (noting that a plaintiff residing in California "cannot claim" that the Southern District of New York "is the more convenient forum for him").

Accordingly, this factor weighs in favor of transfer.

### 2. *Location of Relevant Documents and the Relative Ease of Access to Sources of Proof*

Given the realities of modern technology, courts in this District have repeatedly recognized that the location of relevant documents is often neutral. *See, e.g.*, *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 330–31 (S.D.N.Y. 2016); *ESPN, Inc. v. Quicksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008). Nonetheless, the location of documents "retains some relevance to the venue inquiry." *Price*, 2008 WL 2434137, at *5.

Experian asserts that because Roman Arana resides in Orlando, Florida, any documents relevant to her claims "will also be located there." Doc. 11 at 12–13. Roman Arana responds that "the key documents at issue … are inherently electronic and easily

---

[5] While Roman Arana does not specify the precise manner in which she would be prejudiced by consideration of her Florida residence, her argument appears to be that she elected to litigate in this forum, and does not experience any hardship in doing so, and that the case therefore should not be transferred to the Middle District of Florida solely on the basis of her residency. *See* Doc. 16 at 18. This contention is unavailing. It is contrary to the well settled legal principles discussed above, which make clear that the relevant inquiry focuses on the *convenience* of the parties, not a party's preference for a forum lacking any meaningful nexus to the underlying claims. As explained *infra* Part III.B.3, New York has no such nexus here.

11

transmissible" and that any documents maintained in Florida can be produced through secure electronic means "without undue effort." Doc 16 at 20. Experian, however, offers no explanation as to why the electronic production of such documents, which it contends are located in Florida, would be impractical in the event this matter proceeds in this Court.

Accordingly, this factor is neutral.

### 3. Locus of Operative Facts

"The location of the operative facts is traditionally an important factor to be considered in deciding where a case should be tried." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994). In identifying the locus of operative events, courts generally "look to the site of events from which the claim arises." *Guccione v. Harrah's Marketing Services Corp.*, No. 06-cv-4361 (PKL), 2009 WL 2337995, at *8 (S.D.N.Y. July 29, 2009) (internal quotations omitted). Accordingly, transfer is appropriate when the alleged wrongdoing underlying the claim occurred in the proposed transferee district. *Sheet Metal Workers' National Pension Fund v. Gallagher*, 669 F. Supp. 88, 92–93 (S.D.N.Y. 1987). In the context of claims brought under the FCRA, courts have further held that "the claim arises where the harm occurred." *Dixon v. Mazda Financial Services, Inc.*, No. 21-cv-8920 (LTS), 2021 WL 5853244, at *2 (S.D.N.Y. Nov. 1, 2021).

Experian contends that "the site of most of the relevant events is Orlando, Florida," where Roman Arana resides and where the relevant communications were allegedly sent and received. Doc. 11 at 9, 13. Experian further asserts that any alleged injury to Roman Arana would have occurred in Florida. Doc. 17 at 13. And to the extent any relevant events took place outside of Florida, such as its reinvestigation processes, Experian represents that such conduct would have occurred at its consumer assistance facilities, none of which are located in New York. Doc. 11 at 13. In response, Roman Arana argues that "violations of the FCRA, by their nature, have nationwide

ramifications" and argues that this is "particularly true in New York" which she describes as "the undisputed financial capital of the world." Doc. 16 at 20. She further asserts that she was denied credit from "New York-based institutions." *Id.* Therefore, she also argues that this factor is neutral and, "given the significant ties to New York's financial ecosystem," may in fact support retaining this case in New York. *Id.* at 21.

The Court finds Roman Arana's assertions unpersuasive. She does not identify any specific New York-based financial institution that denied her credit nor does she provide any evidence linking any alleged harm directly to New York. Her general allegation that violations of the FCRA have nationwide implications is insufficient to establish an actual connection between the purported misconduct and this forum. Likewise, her assertion regarding New York's status as the financial capital of the world is similarly insufficient. In sum, her alleged connection to New York is too attenuated to establish a legally sufficient connection to this district.

Accordingly, this factor weighs in favor of transfer.

4. *Availability of Process to Compel the Attendance of Unwilling Witnesses*

Under Rule 45(c)(1) of the Federal Rules of Civil Procedure, a district court generally may only compel, by use of a subpoena, a non-party witness within the state or within 100 miles of the court. *See Guardian Life Insurance Company of America,* 724 F. Supp. 3d at 215; *Fuji Photo Film*, 415 F. Supp. 2d at 375. At a minimum, courts in this District require a party moving to change venue to identify specific non-party witnesses, outside the courts subpoena power, and to provide some evidence that such witnesses would be unwilling to testify voluntarily in this forum. *See, e.g., ESPN*, 581 F. Supp. 2d at 550; *American Eagle Outfitters, Inc. v. Tala Brothers Corp.*, 457 F. Supp. 2d 474, 478–79 (S.D.N.Y. 2006); *Price*, 2008 WL 2434137, at *6.

Contrary to Roman Arana's assertion that "Rule 45 allows nationwide subpoenas for depositions." Doc. 16 at 21 (citing *Linzer*, 904 F. Supp. at 218). *Linzer* certainly does not stand for this proposition as it is flatly incorrect.

13

Here, Roman Arana asserts that "Experian has failed to identify even a single unwilling witness who would be beyond this Court's subpoena power." Doc. 16 at 21. In response, Experian asserts that Roman Arana "does not identify any 'anticipated witnesses from New York-based financial institutions.'" Doc. 17 at 14 (quoting Doc. 16 at 21).

Because neither party has identified any specific non-party witness who would be unwilling to testify in this District, this factor is neutral.

### 5. *Relative Means of the Parties*

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers*, 860 F. Supp. at 135.

Here, in all likelihood, Experian possesses considerably greater financial resources than Roman Arana. Nonetheless, she does not contend nor there is any indication that transferring this action to the Middle District of Florida would impose any undue financial hardship on her.[6] *See Berman*, 30 F. Supp. 2d at 659 (weighing neutrally the relative means between a corporate defendant and individual plaintiff where "no showing has been made that litigating this action in [the proposed transferee district] would impose an undue hardship on the plaintiff").

Accordingly, this factor is neutral.

### 6. *Forum's Familiarity with Governing Law*

The parties do not brief this factor, likely because Roman Arana raises only a single federal claim under the FCRA. *See* Doc. 1-1 at 9–10. In any event, the Court is confident that the Middle District of Florida is well equipped to adjudicate such claims.

---

[6] The Court does not credit Experian's speculative assertion that litigation in the Middle District of Florida "would actually ease the burden on [Roman Arana] flying across the country [], instead of a short drive to a courthouse much closer to her home." Doc. 11 at 14. Instead, the Court's conclusion is based on the absence of any assertion by Roman Arana that litigating in the Middle District of Florida would impose any financial hardship on her. While Roman Arana does argue, in general terms, that "transferring the case would only add unnecessary burdens on [her]," Doc. 16 at 22, she fails to explain what those burdens would be.

14

Accordingly, this factor is neutral.

7. *Weight Accorded to Plaintiff's Choice of Forum*

"A plaintiff's choice of forum is generally entitled to considerable weight." *Berman*, 30 F. Supp. 2d at 659. That choice, however, "is given less weight where … the plaintiff is not a resident of the forum and the cause of action is minimally connected with the forum." *Eichenholtz v. Brennan*, 677 F. Supp. 198, 201 (S.D.N.Y. 1988).

Experian argues that the Complaint fails to allege any meaningful connection between the parties or subject matter and the State of New York. Doc. 11 at 10. In particular, Experian notes that the Complaint does not allege that any relevant conduct toward Roman Arana actually occurred in New York or that any of Roman Arana's alleged injuries arose there. *Id.* at 10, 11. Experian contends therefore, that Roman Arana's choice of forum is entitled to "no deference whatsoever." *Id.* at 11.

Roman Arana contends that New York is an "entirely reasonable" forum because Experian is registered to do business there and maintains significant contacts there. Doc. 16 at 16. She further asserts that the alleged harms, namely damage to her creditworthiness and resulting credit denials, "have direct links to New York" because she "interact[ed] with NY-based lenders and institutions," which she speculates to be "where key decisions by NY financial entities *frequently* shape credit outcomes." *Id.* (emphasis added). Notably, however, Roman Arana does not even allege, let alone provide evidence for, that conclusory assertion.

Roman Arana's reliance on *Iragorri v. United Technologies Corp.* for the proposition that her choice of forum is entitled to "strong presumption" of deference is unpersuasive. *Id.* at 15 (citing *Iragorri*, 274 F.3d at 71–72). The Court notes that the quoted phrase "strong presumption" does not appear in the cited opinion. There, the Second Circuit addressed a motion to dismiss pursuant to the common-law doctrine of *forum non conveniens*, not a motion to transfer pursuant to 28 U.S.C. § 1404(a). *See Iragorri*, 274 F.3d at 70. This distinction is material, as courts generally afford greater

15

deference to a plaintiff's choice of forum in the *forum non conveniens* context because analysis may result in dismissal, whereas a § 1404(a) analysis results in transfer. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (noting Congress's intent to permit transfers pursuant to § 1404(a) "upon a lesser showing of inconvenience" than on *forum non conveniens* grounds).

Roman Arana also contends that "Experian's cited cases offer no support for overriding Plaintiff's choice." Doc. 16 at 16. She attempts to distinguish *Cento Pearl v. Arts & Craft Supply, Inc.* on the grounds that there was "'no reason whatsoever'" for the chosen forum there, and *Pierce v. Coughlin* because it involved "obvious forum-shopping and zero ties." *Id.* at 16–17 (citing *Cento Pearl v. Arts & Craft Supply, Inc.*, No. 03-cv-2424 (LAK), 2003 WL 1960595, at *2 (S.D.N.Y. Apr. 24, 2003); *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992)). Even assuming, *arguendo*, that Roman Arana's characterizations of *Cento Pearl* and *Pierce* are accurate, those same concerns would apply here. The operative facts lack any meaningful connection to New York and Roman Arana resides elsewhere. Her choice of forum, therefore, is entitled to minimal, if any, weight.

Accordingly, this factor does not weigh in favor of retention.

8. *Trial Efficiency and the Interests of Justice*

"[C]onsideration of whether transfer is in the interest of justice is based on the totality of the circumstances, and relates primarily to issues of judicial economy." *Indian Harbor Insurance*, 419 F. Supp. 2d at 407 (internal quotations and citations omitted). "When a case is in its earliest stages, it is generally not inefficient to transfer the case." *Royal & Sun Alliance Insurance, PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 411 (S.D.N.Y. 2016).

Here, the case is in its early stages as discovery has not begun. Further, the Court "has not had to intervene in the case in a manner that would speed the resolution of future issues." *Tlapanc*, 207 F. Supp. 3d at 332–33. Moreover, the interest of justice favors

transfer here because there simply is no apparent reason for the case to be here. *See Cento Pearl*, WL 1960595, at *2 (weighing the interest of justice in favor of transfer where "the choice of this district was completely arbitrary" and "[t]here simply is no reason for the case to be here").

Accordingly, this factor weighs in favors transfer.

## IV.    CONCLUSION

For the forgoing reasons, Experian's motion is GRANTED. The Clerk of the Court is respectfully directed to transfer venue to the Middle District of Florida, and terminate the motion, Doc. 10.

It is SO ORDERED.

Dated:    March 31, 2026
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.